FRANCIS H. DEXTER, Substituted as Sole Complainant,

*v.*

MARIA CRUZ DE GODINEZ ET AL.

Equity, No. 160.

1. In a bill *quia timet,* the court will decree the cancelation of liens and mortgages, and make such other orders as may be necessary to have the same canceled of record.

2. When it appears from old records that a party did not (in Spanish times) have his day in court, this court will give him or his heirs or assigns that right.

3. Liens forty or fifty years old should be presumed to have been discharged unless the contrary positively appears.

Opinion filed July 13, 1908.

*Mr. Willis Sweet,* for complainant.

*Mr. Francis H. Dexter,* for defendants.

RODEY, Judge, delivered the following opinion:

This is a bill *quia timet,* filed for the purpose of preventing the attempted foreclosure of, and to secure the cancelation of, two alleged encumbrance bonds or mortgages regarding the property described. The property is alleged to consist of a plantation called "Pajas," situated near Manati in Porto Rico, and, as it is said, originally contained about 579 cuerdas of land:

Dexter v. Cruz de Godinez.

The suit was filed on September 26th, 1902, and after much delay and a large amount of pleading the bill was finally rewritten under an order of court on October 26th, 1907. The complainants at first consisted of two persons, Francis H. Dexter, and Elisa Kortright,—the latter suing as sole heir of her father, the late Cornelio Kortright. Some time since, complainant Elisa Kortright died, but Mr. Dexter, under due process of law, thereafter became the owner of her interest in the land in controversy, and, after proper proceedings, was duly continued as sole complainant.

The respondents consist of some fifteen or more persons,—men, women, and infants,—residing in Porto Rico, Barbados, Germany, and elsewhere.

After issue had been duly joined, the proofs were taken by the court on January 23d, 1908, without the intervention of any examiner or master. The evidence is largely documentary and is quite voluminous. We have devoted considerable time to a careful examination of the large amount of ancient court records offered or introduced as exhibits, and to a rereading of the entire oral evidence as transcribed from the stenographer's notes in this present case, as well as in cause No. 71, on the common-law docket of this court, which latter case involved this same property. We have also given careful attention to the extensive oral and written arguments and briefs of counsel for the respective parties.

It would not be profitable, in the view we take of the case, to review in detail the history out of which the controversy arises.

It may be well to begin this recital by first stating one of the last things that occurred before the filing of this bill. In

Dexter v. Cruz de Godinez.

September, 1901, said Elisa Kortright filed a suit in eject-ment in this court, as before referred to, against some or the whole of these same respondents, for the possession of the land in controversy, and, after considerable pleading, the case went to issue, and a trial was had before a jury in the forepart of May, 1902. On this trial a verdict was returned in favor of the plaintiff. A judgment was duly rendered thereon, under which, after some resistance on the part of the defendants and others, the then plaintiff was put into complete possession of the whole or most of the property, or, at least, all of it that could then be identified. A motion for a new trial was thereafter made and argued, but it was overruled. No appeal was taken from this judgment, and it still stands in full force and effect. A few months thereafter, the defendants in that suit at law, or most of them, went into an insular court and procured, under a peculiar civil-law procedure, the "adjudication" to themselves of two so-called old bonds or mortgages about which this equity suit is pending, which alleged mortgages had, it appears, re-mained for more than half a century uncanceled in the registry of property, and during which time a lot of proceedings had apparently taken place about the same, or regarding the property here in controversy.

Miss Kortright, joined by complainant Dexter, who had, in the meantime, become vested with a half interest in the property, on learning of these "adjudication" proceedings, at once filed this bill to enjoin the threatened foreclosure of the same, and also praying that they be canceled, and that all clouds upon complainant's title to the land which they so recovered in the suit at law, and which is the same as described in the bill here, be removed and their title forever set at rest.

Dexter v. Cruz de Godinez.

The complainant here introduced in evidence the entire record in the ejectment suit above referred to, and insists that, as no new trial was granted, and no appeal was taken from the judgment, that the matter is *res judicata* here. He points out also that this record shows that every defense which respondents here are attempting to make or to claim on the records they have introduced or offered was attempted to be made in the suit at law, and ruled out by the court, and that, in so far as it was permitted to be made, the jury found the issue against these respondents.

The respondents, of course, deny this, and claim that the suit at law cuts no figure here, and that they have simply become possessed, since the date of the judgment in ejectment, of two unpaid mortgages on the property in question, which they are entitled to now collect or foreclose.

It has never been our fortune to examine a case that presents any more forcibly the peculiar practices and conditions that obtained in Porto Rico during at least the last century of Spanish rule.

Cornelio Kortright was an Englishman, living in Porto Rico along in the fifties of the last century, at which date we will begin the relation of the short outline of the alleged facts in this controversy, although the incipiency of the transactions as to respondents and others is said to have been as long ago as 1829. In 1852 Kortright became tutor or guardian for two minor children named Canales, and also for two other Canales children who were probably much older than the first mentioned. He received some 32,000 pesos in some sort of then current money from the first two children, and an equal amount from the second two. For the first money he gave a sort of a bond,

Dexter v. Cruz de Godinez.

which it is contended amounts to a mortgage, on the plantation in question, to protect the interests of the infants, and for the second he executed what is said to be a direct mortgage on this plantation "Pajas." Complainant here contends that Kortright afterwards satisfactorily settled these money matters with these Canales heirs, and, in fact, one of their descendants came into court during the present trial, and testified that such was the fact, and that he had so known from his infancy that the matter had been entirely settled, and that he or none of the family were making any claim against the estate of Kortright on that account. However, it transpires that some seven or eight years after Kortright received this money belonging to these Canales heirs, an ancestor of these present respondents, one Fausta de la Torre, had some sort of a controversy with a certain Mr. Carballó. This controversy had begun in about the year 1829. It is not clear just how the Canales family was mixed up in it, but it appears that in some manner Kortright was garnished to secure the Fausta de la Torre debt. After giving the matter considerable examination we are clearly of the opinion that the proceedings they took as to Kortright at that time were, at the most, what would now be known as a mere garnishment. Kortright, as it is said, was ordered to pay some nine or ten thousand pesos of some money then current into court, and, in some manner, this plantation "Pajas" was attached to secure it. In this way the plantation went into the hands of a receiver or "depositario," and remained in such custody for many years. Direct creditors of Kortright also about this same time secured attachments or some process of that character against this same plantation "Pajas," and other large properties Kortright then owned. Because of all of this, Kortright was finally driven into bankruptcy.

Dexter v. Cruz de Godinez.

A controversy arose between two of the then insular courts, one situated at San Juan and the other at Arecibo, over the custody of this property, and the litigation that resulted through this conflict of authority lasted for many years, being finally decided, as it is said, in favor of the ancestors of these respondents by the Supreme Court of Spain. In the meantime the "depositario" died, and another one, after years of delay, had to be appointed.

Ample evidence was introduced in the lawsuit, as appears by the record, to show that little or no attention was paid to this plantation by the ancestors of these respondents, and that the same remained in the custody, first, of Kortright, up to the time of his death, which occurred in 1866, and then in that of his widow for many years thereafter, during which time the second set of creditors were also getting the income or some of it from the large amount of property belonging to Kortright, although his wife, as the evidence tends to show, remained as much in possession of it as anybody. What the depositarios did with the income of these estates during all these years does not satisfactorily appear, if in fact they collected it. Finally, after some thirty-seven years of this sort of dilatory proceeding or whatever it was, the property in question is said to have been sold by one of the district courts of the island, and that these respondents or their ancestors, on their bid of these so-called debts or otherwise, were put in possession. It does not satisfactorily appear what became of the bankruptcy proceedings as to Kortright.

At the trial of the recent suit at law in ejectment, the judge who then presided ruled out a great portion of the evidence as to these proceedings through all these long years, on the ground

Dexter v. Cruz de Godinez.

that they were not satisfactory evidence of the fact that Kort-right was ever in fact made a formal party to any of them, and for the further reason that none of them in fact devested Kort-right of his title in his lifetime, and consequently did not do so as to his heirs.

These respondents, or some of them, after thus being in possession of the plantation for five or six years, were, as stated, ejected in the suit at law, and Miss Kortright finally put in absolute possession; although, when the surveyors went to the ground, the actual acreage, for some cause or other, owing, perhaps, to the change of boundary lines, or a misdescription in the first deeds or in the declaration, was found to be short as to quantity more than 165 cuerdas, as it contained only a little more than 400 cuerdas when finally delivered. This, though but the merest outline, and probably not exact as to all facts and details, is as much of the history of this property as we think it necessary to recite.

We do not think it necessary to cite authorities for the fundamental principles of law involved, and will therefore content ourselves with saying that, in our opinion, the respondents have had their day in court, and the judgment against them in the suit at law remains in full force and effect, and therefore this controversy is *res judicata* between the parties. We do not think it necessary to say anything as to what we might have ruled had we been on the bench here at the time of the trial of the suit at law. Nor do we think it necessary to now more than refer to steps in law or in equity that might have been taken at the time of the ejectment suit, or even in this suit, in the way of a cross bill or other proceeding. There are, of course, cases where the judgment of a court can be treated as a nullity, and

thus attacked collaterally, but, in our opinion, this is not one of them. We are further of the opinion that the trial judge in the ejectment suit was right when he held that Cornelio Kortright, the ancestor of the then plaintiff in that suit, had never been in any proper or legal manner devested of the title to the plantation in question, and that hence his sole heir was still the owner in fact and in law of the property, the same as she still was or ought to be on the registry.

The title on the records, as is admitted by both sides, has, save for the dispossession by the adjudication referred to, stood for nearly sixty years in the name of Cornelio Kortright. There ought to be some presumption that these old bonds or mortgages, whichever they are, and that is hard to decide, are paid. Public policy requires such a rule in the absence of positive evidence to the contrary. Statutes of limitation or repose have that object.

It will not do to say that all these proceedings in the insular courts during half of a century of time show that the debts existed, and that the mortgages or bonds were never paid, because it must be remembered that after these respondents were defeated in the ejectment suit here, and failed to take an appeal, they then apparently abandoned every proceeding they had ever brought previous to that date, and began what appears to be a new proceeding in an insular court in 1902, to have these two old alleged bonds or mortgages "adjudicated" to them, so as to try and circumvent the judgment of this court in the ejectment suit, and thus indirectly obtain a new trial. They probably did not inform the insular court of the judgment in the ejectment suit here, or that this court had first taken jurisdiction of the *res*. If this new action of theirs amounted to a new proceeding, as we

Dexter v. Cruz de Godinez.

think it did, then, under any view of the matter, all possible statutes of limitation had long since run against these two alleged debts. Anyway, since American occupation of the island, Kortright or his heirs would be entitled to his or their day in court, as to whether or not he or they owed anything that could be garnished or proceeded against in this way. Let it not be forgotten that Kortright never owed directly any money to these respondents, or to any of their ancestors. If he owed anything that has not been paid, he owed it to the Canales heirs, and was a mere garnishee as to the ancestors of these respondents.

We are therefore of the opinion that the now sole plaintiff here has proved every material allegation of his bill, and that the facts and the law are entirely in his favor, and we so find. We are further of the opinion that complainant is entitled to have his title quieted, as he has prayed for, and to have these so-called mortgages canceled as a cloud upon the same, and that he is entitled to have the injunction made perpetual against the enforcement of the foreclosure of the said instruments, as to this property, and further, that he is entitled to all relief in that behalf that may be necessary in having said instruments canceled of record, etc.

Therefore let a proper decree be prepared in the premises, to carry out the full intent and meaning of this opinion. The cause is retained for all necessary purposes until the entry of such decree and its enforcement.